IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| V2 LIFE SOLUTIONS, LLC, D/B/A : | |
| SMART COSMETIC AND SKIN STUDIO : | |
| : | |
| v. : | CIVIL ACTION NO. 21-0106 |
| : | |
| AESTHETICS BIOMEDICAL, INC. : | |

**McHUGH, J.**                                                                                         **March 8, 2021**

**<u>MEMORANDUM</u>**

The essence of this case involves a breach of contract. Plaintiff, the owner of a cosmetic and skin studio in Pennsylvania, alleges that it purchased a microneedling device from Defendant for use in its business. Plaintiff purportedly relied on Defendant's specific representations that the device had been approved by the United States Food and Drug Administration ("FDA") for use on human skin at a particular frequency setting, when in fact no such approval had been granted. Without FDA approval, Plaintiff alleges that it cannot use the device to perform cosmetic work, rendering it useless.

Plaintiff has stacked several far more tenuous claims on top of the central claim for breach of contract, which Defendant now moves to dismiss. For the reasons set forth below, I will dismiss four of those counts, preserving breach of warranty and unjust enrichment as an alternative theory of liability.

I.     **Facts and Procedural Posture**

Plaintiff purchased the VIVACE Premier Fractionated Microneedling RF machine from Defendant, Aesthetics Biomedical, Inc. ("ABM"), for use in Plaintiff's cosmetic and skin studio on December 28, 2018. Compl. ¶¶ 1, 8, 12, ECF 1–2. Microneedling machines are designed to provide fractional delivery of small needles into the skin to render various cosmetic treatments.

1

Before execution of the purchase agreement between Plaintiff and ABM, ABM's authorized distributor, Cartessa Aesthetics, LLC, informed Plaintiff that the FDA had approved the device for use at both the 1mHz and 2mHz settings. *Id.* ¶¶ 11–12.[1] Purportedly relying on such representations, Plaintiff utilized a financing company to purchase the device for $64,900. *Id.* at ¶¶ 14–16. The purchase agreement "specifically identifies the machine's use at both the 1mHz and 2nHz [sic] frequencies." *Id.* ¶ 13.

After obtaining the microneedling device, Plaintiff used it to perform cosmetic work on clients at the 2mHz setting for a period of roughly fifteen months. *Id.* ¶ 20. In March and April of 2020, however, it received two notices from Defendant, each explaining that the device was *not* cleared for use at the 2mHz setting, thereby contradicting the information that had previously been provided. *Id.* ¶¶ 22, 24. Because Plaintiff's only alternative would be to run the device at the 1mHz setting, which is too painful for its clients, it had to stop using it altogether. *Id.* ¶¶ 23, 25. Given that the device is no longer functional in Plaintiff's studio, Plaintiff has attempted to recover the moneys it paid to ABM, but to no avail. *Id.* ¶ 36.

The complaint asserts seven counts under state law against the Defendant. Those counts include: (I) Breach of Contract; (II) Breach of Implied Warranty of Merchantability and Fitness for a Particular Purpose; (III) Unjust Enrichment; (IV) Conversion; (V) Agency; (VI) Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law; (VII) Interest; and, (VIII) Punitive Damages. ECF 1-2 at 12–39. *Id.* at ¶¶ 33–89. Defendant's 12(b)(6) Motion to Dismiss seeks dismissal of Counts II through VIII. Def.'s Mot. Dismiss 1–2, ECF 4.

---

[1] Cartessa was originally a named defendant but Plaintiff has voluntarily dismissed all claims against it. ECF 2, 3.

## II.  Standard of Review

Motions to dismiss under Fed. R. Civ. P. 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## III.  Discussion

The parties agree that Arizona law applies to Plaintiffs' contract claims, given the explicit choice of law provision in the parties' purchase agreement.[2]  *See* Def.'s Mot. Dismiss at 6, n.5 (citing Ex. A, p. 2 § 18); Pl.'s Resp. 11–13 (citing only Arizona law).  The parties also agree that Pennsylvania law applies to the remaining claims.[3]  *See* Def.'s Mot. Dismiss at 7–10 (citing only Pennsylvania law); Pl.'s Mot. Dismiss 13–16 (same).  I will analyze each claim in turn.[4]

> **A. Plaintiff has sufficiently pled in Count II its claims that the Defendant breached implied warranties arising from the contract.**

Plaintiff avers that Defendant breached the implied warranties of merchantability and fitness for a particular purpose "by misrepresenting the fact that the VIVACE Premier Fractionated Microneedling RF machine was approved . . . for use at the 2mHz setting." Compl. ¶ 42. "In Arizona, an implied warranty of merchantability arises in a contract for a sale of goods by a merchant unless excluded or modified." *Lemons v. Showcase Motors, Inc.*, 88 P.3d 1149,

---

[2] I may consider the contract as an undisputedly authentic document. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  Section 18, entitled "Applicable Law," states that "[a]ll contracts for sale of Products by ABM shall be interpreted under and governed by the law of the State of Arizona." Def.'s Mot. Dismiss, Ex. A at 3.  Here, the rules of the forum state, Pennsylvania, instruct that I honor the parties' choice of law provisions. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Smith v. Commonwealth Nat. Bank,* 557 A.2d 775 (Pa. Super.1989).

[3] In addition to the fact that the parties have cited exclusively to Pennsylvania law in their briefs with regard to Counts III–VIII, I have separately determined that there is no relevant conflict between Arizona and Pennsylvania state law *vis a vis* such claims.  *See Wilson v. Transp. Ins. Co*., A.2d 563, 571 (Pa. Super. 2005) ("In Pennsylvania, choice of law analysis first entails a determination of whether the laws of the competing states actually differ. If not, no further analysis is necessary").

[4] Defendant also contends that Plaintiff is not entitled to punitive damages on its breach of contract claim.  I need not address this argument since Plaintiff's Count I ("breach of contract") is not at issue in this motion.  Nor, for that matter, has Plaintiff included punitive damages in its request for relief under that count. *See* Compl. 20–21.

1151 (Az. Ct. App. 2004) (citing A.R.S. § 47–2314(A)).  And, "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods," there arises an implied warranty of fitness for particular purpose. A.R.S. § 47-2315.  Parties to a contract may waive these warranties, provided such waiver is in writing and conspicuous.  *See* A.R.S. § 47-2316(B); *Seekings v. Jimmy GMC of Tucson, Inc.*, 638 P.2d 210, 216 (Ariz. 1981) (finding written disclaimer was not unconscionable under Arizona law).

Defendant argues that a disclaimer in the purchase agreement regarding the implied warranties of merchantability and fitness for particular purpose satisfies these statutory requirements for waiver.  *See* A.R.S. § 47-2316(B).  Section 13 of the agreement states:

> ABM MAKES NO WARRANTIES, EXPRESS OR IMPLIED, AND NO WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, EXCEPT AS EXPRESSLY SET FORTH IN THE ABOVE WARRANTY.

Def.'s Mot. Dismiss 3, Ex. A.  However, the language "set forth in the above warranty," is, as both parties admit, illegible.  Def.'s Mot. Dismiss 2, n.1; Pl.'s Resp. 5–6.  Defendant therefore requests that the Court not only consider the original signed contract, but also an additional, unsigned page three, reflecting "Terms and Conditions of the same version [Plaintiff] signed." *See* Def.'s Mot. Dismiss, Ex. A at 3–4.

At the motion to dismiss stage, the Court may consider "an *undisputedly* authentic document that a defendant attaches as an exhibit . . . if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citing Fed. R. Evid. 201) (emphasis added).[5]  But given that the Plaintiff disputes the

---

[5] "[I]n cases heard on diversity jurisdiction, a federal court must apply state substantive law and federal procedural law."  *King v. E.I. DuPont De Nemours & Co.*, 741 F. Supp. 2d 699, 701 (E.D. Pa. 2010) (citing *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78 (1932) and *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)).

authenticity of the additional, unsigned page three supplied by the Defendants, Pl.'s Resp. 6, and because the language of the original, signed contract is illegible, I must deny Defendant's motion with regard to Count II.

### B. Plaintiff's claim for unjust enrichment in Count III survives as an alternate theory of liability.

Plaintiff alleges that the Defendant was unjustly enriched through the parties' transaction. Compl. at ¶ 60.  Unjust enrichment is an equitable doctrine that "applies only to situations where there is no legal contract." *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006) (citing *Wingert v. T. W. Phillips Gas & Oil Co.*, 57 A.2d 92, 94 (Pa. 1959)).  As a general rule, "the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract." *Id*.  Here, Plaintiff has uniformly alleged that a contract between the parties exists, leading Defendant to argue that Plaintiff's claim for unjust enrichment is not cognizable under Pennsylvania law.

Plaintiff has certainly averred a contract, and Defendant has admitted as much.  In some instances, that would suffice to prevent a plaintiff from also claiming unjust enrichment.  But in admitting the existence of the contract, Defendant has not committed to any position as to its scope.  *See Vantage Learning (USA), LLC v. Edgenuity, Inc*., 246 F. Supp. 3d 1097, 1100 (E.D. Pa. 2017) (noting that a plaintiff may plead unjust enrichment if "the contract at issue covers only part of the relationship between the parties").  Although the purchase order specifically uses the terms "FDA Cleared" and specifies both frequencies, Defendant may try to contest what that language means.  Moreover, Plaintiff's pleadings address events that allegedly transpired before the contract into came into effect.  *See* Compl. ¶ 60 (stating that "during the period of time at issue in this action," Defendant knew the machine was not FDA-approved at the 2mHz setting).

I find Plaintiff's pleadings analogous to those in *Lugo v. Farmers Pride,* 967 A.2d 963, 970 (Pa. Super. 2009). There, the Superior Court found that the plaintiff had properly raised unjust enrichment as an alternative theory of liability in quasi-contract by pleading it as a separate cause of action. Because Plaintiff has included unjust enrichment as a separate cause of action, it may also pursue a claim for unjust enrichment as an alternative theory of liability. And at this stage, without fuller development of the record, dismissal of this claim would be premature.

### C. Plaintiff's claim for conversion in Count IV is barred by the "gist of the action" doctrine.

Plaintiff alleges that Defendant converted the payment of $64,900 for the microneedling device, first by accepting the money when Defendant knew that the device had not been approved by the FDA for use at the 2mHz setting, and later by refusing to return the money after disclosing that the device had not been approved. Compl. ¶¶ 66–68. Defendant responds with several arguments, only one of which need be addressed. Conversion is a tort. Under Pennsylvania's "gist of the action" doctrine, a plaintiff is prohibited from recasting breach of contract claims as tort claims. *Erie Ins. Exch. v. Abbott Furnace Co.*, 972 A.2d 1232, 1238 (Pa. Super. 2009). Specifically, the doctrine acts to foreclose tort claims:

> (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.

*Hart v. Arnold*, 884 A.2d 316, 340 (Pa. Super. 2005).

The $64,900 payment was made pursuant to the parties' contract. Compl. ¶ 35. Plaintiff voluntarily made the payment based upon what it expected to receive in return—the classic "benefit of the bargain." By any measure, what Plaintiff would seek to prove under a tort theory

6

is the same as it must prove under a contract theory. *See Hart*, 884 A.2d at 340. As numerous other courts have noted, to hold otherwise would "introduce needless confusion into the judicial process, a step that Pennsylvania state and federal courts have refused to take." *Leonard A. Feinberg, Inc. v. Cent. Asia Capital Corp.*, 974 F. Supp. 822, 845 (E.D. Pa. 1997). (dismissing conversion claim under Pennsylvania "gist of the action" doctrine) (internal citation omitted).

The conversion claim in Count IV will be dismissed.

### D. Plaintiff's claim in Count VI that the Defendant violated Pennsylvania consumer protection law fails because Plaintiff purchased the microneedling device primarily for commercial purposes.

In Count VI, Plaintiff avers that Defendant's misrepresentations constitute "unfair or deceptive acts or practices" under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). *See* 73 P.S. § 201 *et seq.*; Compl. ¶ 80. Defendant argues that since Plaintiff purchased the microneedling device for commercial purposes, the transaction does not fall within the protections of the UTPCPL. Def.'s Mot. Dismiss 9; *see* 73 P.S. § 201-9.2 (providing a private right of action to persons that make purchases "primarily for personal, family, or household purposes"); *Valley Forge Towers S. Condo. v. Ron-Ike Foam Insulators, Inc.*, 574 A.2d 641, 649 (Pa. Super. 1990), *aff'd*, 605 A.2d 798 (Pa. 1992) (plaintiff sufficiently stated a claim under the UTPCPL where product was purchased "primarily for personal, family, or household purposes").

Because the device was purchased for business use, Plaintiff acknowledges that it "does not appear to be entitled to a private cause of action under the UTPCPL." Pl.'s Resp. 16. Count VI will be dismissed.

### E. Plaintiff's claims under Count V, VII, and VIII each fail to state a cause of action.

Likewise, Defendant argues that Count V ("Agency"), Count VII ("Interest") and Count

VIII ("Punitive Damages") each fail to state a cause of action cognizable under state law. *See Bill Goodwin Const., LLC v. Wondra Const., Inc.*, No. 3:13CV157, 2014 WL 1415078, at *6 (M.D. Pa. Apr. 10, 2014) ("our research has failed to discover any case, which supports plaintiff's proposition that Pennsylvania recognizes a claim for agency relationship"); *see also Hilbert v. Roth*, 149 A.2d 648, 652 (Pa. 1959) ("the right to punitive damages is a mere incident to a cause of action—an element which the jury may consider in making its determination—and not the subject of an action in itself"). Plaintiff itself acknowledges as much in its response. Pl.'s Resp. 16.

Counts V, VII, and VIII will therefore be dismissed.

/s/ Gerald Austin McHugh
United States District Court